## HOME INS. CO. OF NEW YORK v. SCHARNAGEL.

### 8 Div. 493.

Supreme Court of Alabama.

May 11, 1933.

Rehearing Denied June 9, 1933.

Lange, Simpsin & Brantley, of Birmingham, for appellant.

J. Foy Guin, of Russellville, for appellee.

THOMAS, Justice.

The court, sitting without a jury, rendered a judgment for the plaintiff.

The suit was upon a policy insuring plaintiff's automobile against loss "by theft or other perils in the policy of insurance mentioned," and alleging the theft of the car by the party named and on the day specifically indicated.

The first assignment of error challenges the action of the trial court in overruling defendant's demurrer to plaintiff's replications (Nos. 5, 6, 7, 8, 9, and 10) to plea 3.

The pleas averred a proviso of nonliability under the policy, to the effect that "plaintiff ought not to recover * * * where the loss of said automobile was suffered by the assured from voluntary parting with title and/or possession of said automobile, whether or not induced so to do by any fraudulent scheme, trick, device, or false pretense. Defendant avers that the loss of said automobile by the plaintiff as described in said count was suffered by the plaintiff from the voluntary parting of the possession of said automobile by the plaintiff to the said John Carter"; or "ought not to recover * * * for any loss or damage to the said automobile while said automobile was subject to any [other] lien, mortgage, or other encumbrance" than that of the Universal Credit Company; and it is alleged the same was subject to a purchase mortgage to C. R. Wilson, contrary to the contract provisions of the policy.

The issues on which the trial was had are: (1) Did Carter steal the car, or did the plaintiff lend it to him? (2) Were there valid incumbrances on the car, other than that permitted by the policy—to the Universal Credit Company? (3) If so, did Wilson, the agent procuring the insurance, have knowledge thereof at the time of his issuance of the policy, and was that knowledge obtained in the negotiations leading up to and affecting the insurance contract chargeable to the defendant?

The evidence shows that the Wilson Motor Company, a partnership, was composed of Charles R. and Charles E. Wilson, dealers in automobiles and from whom the car was purchased; that the title was retained for the balance of the purchase price; that the sellers procured the issue of the insurance policy on the car against its loss by theft, and said policy was procured by Wilson and mailed to plaintiff from without the state; that the balance of the money was borrowed from Universal Credit Company and from Wilson's guardian account, on the date of the issue of the policy, and on the date of the renewal thereof was discounted to the Citizens' Bank & Savings Company as a "promissory note"; that the "financial sales contract" that purchaser gave in the first instance was fully paid before the loss of the car. The written notice of loss offered in evidence by the defendant contained the statement of the fact that the renewal note, the obligation at the time of the loss, was only the personal "note to Wilson Mtr. Co. and Mortgage to the U. C. C." (meaning Universal Credit Company).

There were conflicting tendencies in the testimony. The officials of the Citizens' Bank & Savings Company, the cashier and assistant cashier with whom the renewal note was discounted, testified as to whether or not there was a retention of title to the car. These officials said there was such lien; the plaintiff and the discount records of that bank showed and stated that there was only a note on which was written, as "indorser" or "security and indorsers," the name of "Wilson Motor Company." The burden was upon the defendant, under the pleas, to establish the existence of a lien or mortgage that would vitiate the policy.

The evidence further shows that the installment contract for the purchase price was immediately transferred to Universal Credit Company by the Wilson Motor Company, and that, as we have indicated, or according to plaintiff's testimony, it was fully paid by plaintiff.

We may advert to several of the provisions of the contract, which read as follows:

"The Home Insurance Company, New York. —stock company—in consideration of the warranties and the premium hereinafter mentioned does insure the Assured named

herein, for the term herein specified, to *an amount not exceeding the actual cash value of the property at the time any loss or damage occurs.* * * * [Italics supplied.]

"The automobile described is fully paid for by the assured and is not mortgaged or otherwise encumbered, except as follows:

Sheet" and "Statement of Transaction" to Universal Credit Company of "3/4/31" were also exhibited by the evidence.

Did the trial court err in overruling demurrers to plaintiff's replications numbered 5, 6, 7, 8, and 9, as interposed to defendant's plea 3. The substance of that plea was, that

---

"Lien of the Universal Credit Company. * * *
D. Schedule of Perils—Limits of Liability—Net Rates and Premiums
Perils—Limit of Liability—Net Rates—Premiums

| Name of assured, W. C. Scharnagel, | | | |
|---|---|---|---|
| | Fire | | |
| | Lightning | | |
| | Transpor- | | |
| | tation | 200 | 2.20 | 4.40 |
| E. | | | |
| Spruce Pine, Alabama. | Theft | | |
| | Robbery | | |
| *And Universal Credit Company, loss, if any, to be* | Pilferage | 200 | .60 | 1.20 |
| *adjusted with the purchaser, though to be paid,* sub- | | | |
| ject to the conditions of this policy, only *to the Uni-* | Total Premiums | | $5.60 |
| *versal Credit Company for the account of all inter-* | | | |
| *ests.* * * * [Italics supplied] | | | |

---

"This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the Assured agrees that its terms embody all agreements then existing between himself and the Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this Company shall have power to waive any of the terms of this policy unless such waiver be written or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached."

The several conditions or exceptions are set up in defendant's pleas as we have indicated, and clause L of the policy stipulates an exception where "any one acting under express or implied authority of the assured, voluntarily parts with title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense."

The evidence fails to show that any written application was executed to procure the policy by and through the Wilsons, etc. The record further discloses the "Conditional Sale Contract," "Dealer's Representations, Assignment and Guaranty to Universal Credit Company," containing, among other things, that the "Undersigned warrants that down payment made by purchaser as stated above was in cash and not its equivalent, unless written notice otherwise was given Universal Credit Company, and that no part thereof was loaned directly or indirectly by undersigned to purchaser." The "Purchaser's Statement" authorized Wilson Motor Company or Universal Credit Company to purchase insurance for "mutual protection, and such other insurance as may be required to cover our respective interests and to execute applications for such insurance," etc. The "Dealer's Work

plaintiff voluntarily parted with the possession of the car to said Carter, contrary to contract provisions and limitation of liability contained in the policy. The replications (Nos. 5 and 6 for example), to which demurrers were overruled, were to the effect that an adjuster, engaged in the investigation of the loss in oral conversation with the plaintiff before the filing of the suit, denied liability for the theft of the car *on the one ground* (stated by him to plaintiff) *that the policy was void because of an alleged untrue statement contained in the application for the policy of insurance, namely, that the application contained, or the adjuster claimed that it contained, a statement to the effect that plaintiff had paid Wilson Motor Company, from whom he bought the automobile, $100 in cash, as a part of the purchase price;* that defendant thereby waived the defense asserted in the plea; and replication 6 concludes with the averment: "And the plaintiff relied on such statement by the adjuster, and was misled thereby, and filed his suit on such asserted defense and that such defense was the only defense claimed by the defendant. Wherefore the defendant is now estopped to set up the defense asserted in the plea." Replication 7 is to the effect: "That the policy sued on has written or printed or stamped thereon, as one of the terms of the policy, the following words, towit: 'All losses under this policy should be reported immediately to Motor City Agency, Inc., Sterick Building, 8 North Third Street, Memphis, Tennessee.' The plaintiff alleges that said Motor City Agency was the agent of the defendant with authority to receive notice of the loss and deny liability thereon; that shortly after his loss by theft he did notify Motor City Agency through Wilson Motor Co. from whom he had bought the automobile and the insurance policy; that shortly thereafter he received from Motor

City Agency, through registered mail, a letter, denying for the defendant liability for the loss and stating as follows: 'The terms of sale as represented to us in application for insurance on your car are not in accordance with the true facts. In as much as this is a misrepresentation under our policy contract, your policy has been void and without effect since inception date, namely, March 3, 1931.' " And replication 8 concludes: "And the plaintiff relied on said denial of liability and on the assertion that defendant denied liability on the ground stated in said letter, and was misled to his injury. Wherefore the defendant is now estopped to set up the defense asserted in the plea."

■ The law is settled that forfeitures provided in a policy of insurance may be waived by an agent in an effort for adjustment, having authority and full knowledge of the facts of the forfeiture; and that the status quo of the parties to a policy (if to be maintained on the effort for adjustment) may be maintained by what is known and designated in insurance law as a *nonwaiver agreement*, entered into by the parties before and at the time of the investigation and attempted adjustment of the loss. Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; National Life Ins. Co. of the U. S. of America v. Reedy, 217 Ala. 114, 117, 115 So. 8. In Indemnity Company of America v. Pugh, 222 Ala. 251, 253, 132 So. 165, 167, it was said: "In Ray v. Fidelity-Phoenix Fire Ins. Co., 187 Ala. 91, 65 So. 536, 538, it was held that the company's mere investigation of the loss on its own account, and for its own satisfaction, would not constitute a waiver of proof of loss, but, in discussing conduct from which such waiver may be reasonably inferred, the court quoted with approval the following from Cooley's Briefs: 'If the company investigates the loss on its own account, and so conducts itself with relation thereto as to show a satisfaction with the knowledge thus obtained, or to induce reasonable belief in insured that it is so satisfied, and does not desire formal notice or proofs, it will amount to a waiver of such formalities.' " There was no nonwaiver agreement shown by the evidence.

■ The demurrers did not designate any particular replication by name or number; were directed to the replications of the plaintiff separately and severally. The replications, likewise, did not designate; nor were they directed to pleas by name or number, but as replies to defendant's pleas separately and severally. This amounted to a filing of a separate replication to each plea and demurrer thereto; for it is declared that, "where a plea is addressed to each and every count of the complaint, it is equivalent to filing it separately to each count, and hence, if the plea was good as to one count, it was error to sustain a demurrer generally to the plea." Barbour v. Shebor, 177 Ala. 304, 58 So. 276. Demurrers to replications 5 to 10, inclusive, were overruled. In replications 5 and 6 there was denial of liability (that the policy was void) on the ground of misrepresentation contained in the application for the policy of insurance, "that the adjuster claimed that it contained a statement to the effect that plaintiff had paid Wilson Motor Co. from whom he bought the automobile, $100.00 in cash, as a part of the purchase price," and that by naming and setting up such a ground of defense (avoiding the policy) through the agency of its said adjuster, without nonwaiver agreement, "the defendant waived the defense asserted in the plea," meaning plea 3 and other like pleas to the effect that plaintiff *voluntarily parted with the possession* of the automobile to the party carrying it off or stealing same; and pleas setting up liens or incumbrances contrary to the provisions of the policy. The grounds of demurrer assigned to the replications do not question the full knowledge of the facts embraced in the pleading asserting waiver, and did not challenge the replications for the lack of necessary and specific averment which should be indicated by the demurrer.

■■ Whatever the rule may be in other jurisdictions, it is established with us that a suicide exception contained in a life policy may be waived after investigation and with knowledge by an agent with authority; or estoppel founded thereon; or an exemption of military or naval service contained in a life policy can be likewise waived by the assertion of another ground of defense with full knowledge of the facts. It must follow that, under a theft policy, an insurer with full knowledge waives the provision or exception of loss by actual theft, where possession is given by the owner, by resting nonliability on other asserted grounds of defense, as that, for exemple, which is set up in replications 5 and 6—*by a denial of liability on the ground that the policy was void* because of the facts averred as to representations of cash purchase price. Liverpool & London & Globe Ins. Co., Limited, of England v. McCree, 213 Ala. 534, 536, 105 So. 901; National Life & Accident Ins. Co. v. Singleton, 193 Ala. 84, 69 So. 80. That is to say, where the contract is repudiated for the *one reason stated*, and the relationship of assured and insurer denied by the agent with knowledge and authority, and the plaintiff is informed that there is no valid, binding, and existing contract or policy or liability of insurance, he has the right to rely thereon to bring his suit on that premise and defense. The relationship out of which other defenses arise is denied, and all other grounds of defense are waived in the denial of such contractual relations of the parties. Thus is waived any defense defendant may

have had under the contract, such as the existence of a mortgage or other lien, or the voluntary surrender of the possession to Carter. National Fire Ins. Co. of Hartford v. Tennessee Land Co., 224 Ala. 113, 139 So. 227; Ray v. Fidelity-Phoenix Fire Ins. Co., 187 Ala. 91, 65 So. 536; Indemnity Company of America v. Pugh, 222 Ala. 251, 132 So. 165; Georgia Home Insurance Co. v. Allen, 128 Ala. 451, 459, 30 So. 537, and earlier authorities; New Brunswick Fire Ins. Co. v. Nichols, 210 Ala. 63, 97 So. 82. There was no reversible error in overruling demurrers to the replications on the grounds that are assigned.

That the Wilsons or their partnership acted in the capacity of an agent in procuring the insurance is shown by the evidence; and this cannot be denied with assurance. Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180. It is provided by our statutes that insurance companies doing business in this state may contract (in this state) only through Alabama agents duly commissioned and licensed; and it is not presumed or shown that the defendant violated the law in the procurement or the issue and delivery of this policy. Sections 4590, 8353; Noble v. Mitchell, 100 Ala. 519, 14 So. 581, 25 L. R. A. 238; Id., 164 U. S. 367, 17 S. Ct. 110, 41 L. Ed. 472; New Brunswick Fire Ins. Co. v. Nichols, supra; Girard Fire & Marine Ins. Co. v. Gunn, supra; Lett v. Liverpool & London & Globe Ins. Co., 213 Ala. 488, 105 So. 553. Such agent cannot waive a condition after delivery. Ætna Fire Ins. Co. v. Kennedy, 161 Ala. 600, 50 So. 73, 135 Am. St. Rep. 160.

The question recurs: Did the trial court err in rendering final judgment for plaintiff? It is true the policy was made payable to *Universal Credit Company for the account of all interests.* This question of the right of plaintiff to maintain suit in his own name was not presented on the trial.

The evidence shows that Universal Credit Company has been paid, and thereafter the owner, Scharnagel, is the party at interest, the insurance being payable to *Universal Credit Company for the account of all interests.* After the loss is fixed, suit may be maintained in the name of such beneficial owner. Sections 5699, 5700, 5707, Code; Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 661, 130 So. 180; Union Ins. Soc. of Canton, Limited, v. Sudduth, 212 Ala. 649, 103 So. 845; Norwich Union Fire Ins. Co. v. Prude, 145 Ala. 297, 40 So. 322, 8 Ann. Cas. 121; National Fire Ins. Co. of Hartford, Conn., v. Kinney, 224 Ala. 586, 141 So. 350; Capital City Ins. Co. v. Jones, Assignee, 128 Ala. 361, 364, 30 So. 674, 86 Am. St. Rep. 152. See, Ingram v. Evans, ante, p. 14, 148 So. 593, on beneficial interest under bonds.

The case was before the court without a jury, and under our rule (Hackett v. Cash, 196 Ala. 403, 72 So. 52) we will not disturb the judgment rendered under the conflicting evidence and reasonable tendencies thereof.

The judgment of the circuit court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN, FOSTER, and KNIGHT, JJ., concur.

GARDNER and BROWN, JJ., concur in the conclusion.

BROWN, Justice (concurring specially).

I am of opinion that the coverage of the insurance contract cannot be enlarged or extended by waiver or estoppel. To so hold would be to make a new contract of insurance covering losses not covered by the original, and the law is well settled that this cannot be done in the absence of a new consideration. Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658; 5 Cooley's Briefs on Insurance, page 3953; Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N. W. 242.

I am further of opinion that the replication to defendant's plea 3 was subject to demurrer, but the grounds assigned were too general, and were properly overruled for this reason. Code 1923, § 9479; McGehee v. Western Union Tel. Co., 169 Ala. 109, 53 So. 205, Ann. Cas. 1912B, 512.

I therefore limit my concurrence to the conclusion announced in the majority opinion.